King *v.* State

No. 43804          February 28, 1966          183 So. 2d 494

*Williamson, Pigford & Hendricks,* Meridian, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Sмiтн, J.

This is an appeal by Lawrence King from a judgment of the Circuit Court of Lauderdale County denying his motion for a new trial.

King was indicted for murder at the April 1960 Term of Circuit Court of Montgomery County. Venue was changed to Lauderdale County. In August 1960 the case was tried, but the jury was unable to agree upon a verdict. In September 1960, the case was brought to trial again and a jury selected, but before the taking of testimony began, King, agreeable to the advice of his counsel, withdrew his plea of not guilty and entered a plea of guilty. Pursuant to his conviction upon this plea, he was sentenced to serve a life term in the State Penitentiary. Since then he has been an inmate of that institution.

On April 27, 1965, acting through counsel who represented him in the original proceedings, King filed in the Circuit Court of Lauderdale County, Mississippi a motion styled, ''Motion for a New Trial.''

The motion proceeds with a certain frankness. In it, King states, in substance, that he entered his plea of guilty because he was afraid that if he persisted in denying his guilt and went to trial he would be convicted and sentenced to death. He said that his reason for entertaining this fear was that the jury might believe the testimony of his accomplice rather than his own. He asserts that the reason for his fear that the jury would believe the testimony of his accomplice rather than his own was that neither he nor his counsel could discover any way to show that the accomplice was not telling the truth. Supporting and attached to the motion were the affidavits of two convicts, Eugene Steen and Eddie Gray. There was also attached a transcript of testimony given by one Dr. Fernando Woodworth in a civil suit for damages brought by the heirs of the murder victim against King.

Upon the hearing of the motion, the affiant Steen repudiated his affidavit and testified for the prosecution. Affiant Eddie Gray was not produced at all.

Dr. Woodworth did testify. He said that he was serving as a doctor at the Penitentiary Hospital in September 1962 when he was called to attend Alex Morris, an inmate and King's accomplice in the murder. He said further that Morris on his deathbed recanted his testimony, given at the mistrial, that he had been employed by King to kill the murder victim. However, this deathbed confession remained locked within the breast of Dr. Woodworth for almost two years and was not divulged to anyone until, on an occasion when Dr. Woodworth himself was confined in the Choctaw County jail on charges not connected with this case, he was allowed to go across the street, escorted by the sheriff, to consult professionally the attorney who defended King in the murder prosecution. This attorney also prepared and filed the motion for a new trial here under consideration.

Upon the hearing on the motion, the attorney, quite properly, declined to disclose Woodworth's purpose in visiting him on this occasion on the ground that it was privileged as a communication between attorney and client. In any event, on this visit, for the first time, Woodworth advanced the assertion that he could testify that Morris had recanted his former testimony.

Upon the hearing on the motion, testimony was introduced to the effect that Dr. Woodworth's reputation for truth and veracity was bad, and that he was not to be believed upon oath. It was shown that he had been refused membership in the Tri-County Medical Society and in the Mississippi Medical Society, and that he had surrendered his narcotic's license. There was proof that he was a violent and unstable character. Also, in reply to a question as to whether he had confessed to an agent of the Treasury Department of the Bureau of Narcotics at Monticello, Mississippi, that he had been taking demorol for three years, he finally answered that he denied making the statement, ". . . because I don't recall the name of the agent, and I don't recall what the conversation was about. It has been too long."

This witness admitted that he had been compelled to resign his commission in the Air Force "in lieu of court martial." It appears that this witness had a number of misdemeanor convictions. The movant introduced the record made in the original trial in which the jury failed to agree. Movant also introduced the record made in a civil case brought by the heirs of the murder victim against King in which Dr. Woodworth testified as to the alleged recanting of his former testimony by Morris, Morris then being dead.

The affiant Steen, King's fellow inmate at the Penitentiary, whose affidavit is attached to the motion, testified at the hearing and said that King had induced him to make the affidavit by promising that when he, King, was released, he would obtain the release of affiant. He

testified that Morris had not made any admission to him that his former testimony was untrue, and his own statement to that effect in the affidavit was wholly false. Gray, the other affiant, did not testify at all.

The evidence shows that Dr. Woodworth and King were friendly at the Penitentiary and at one period King was the ambulance driver for the prison hospital.

The background of the appellant's motion is as follows:

At the original trial on the murder indictment it was shown that King, the sheriff of Montgomery County, had employed Morris to kill Kelly, one of King's deputies, of whose wife King had become enamored. In addition to the testimony of Morris, there was other corroborating circumstantial evidence of King's guilt. At the time, King was nearing the completion of a four-year term as sheriff of Montgomery County. He was thoroughly familiar, by virtue of his office, as chief law enforcement officer of the county, with criminal procedure and practice, and the effect of a guilty plea. He was a man of affluence and standing in his community.

Throughout, at every stage of the proceedings, he was represented by and had the advice of the most competent, experienced, and able defense counsel in the State of Mississippi.

At the time he entered his plea of guilty to the charge of murder, he had already gone through a trial of the case and well knew of what it consisted. At the hearing upon the motion, King's chief counsel testified as to the facts immediately antecedent to the entry of the plea of guilty. He said:

"... The result of that was that Mr. Ringold, and Mr. Lester Williamson (King's other counsel) and myself took Mr. King back to the witness room, along with the members of his family, and we went into a long discussion in consideration of the point."

(The point having been whether to plead guilty or not.)

King's chief counsel continued:

". . . He (King) wanted to go ahead with the trial, but it was our considered judgment as his counsel that under all the facts and circumstances of the case, wherein he was accused by a witness that we had no opportunity to impeach, that if a jury did believe beyond a reasonable doubt that he had hired Alex Morris or caused Alex Morris to kill the sheriff, (sic) that the jury very likely would put him in the gas chamber, and we felt it was the better part of good judgment regardless of the merits of the case to plead guilty and to wait further developments." (Record at 93-94.)

Lawrence King was called as a witness at the hearing on the motion. However, in placing him on the stand, his attorney specified, "this man is called as a rebuttal witness only" and his testimony was expressly limited by his counsel to an attempt to refute testimony offered by the state as to the procuring of Steen's false affidavit and related solely to giving his version of how he obtained the affidavit from Steen. He did not testify that he was not guilty of the murder, nor subject himself to cross-examination, except upon the restricted question of the false affidavit.

At the conclusion of the hearing, the trial court denied the motion. ▮▮ ▮ We think the court was correct in so doing.

In Jenness v. State, 144 Me. 40, 64 A. 2d 184 (1949), the court stated the effect of a plea of guilty:

"What is the effect of such a plea of guilty upon arraignment? A voluntary plea of guilt when understood by a respondent has always been considered a solemn confession from the only person who 'had the best possible knowledge of the truth.' *State v. Siddal*, 103 Me. 144, 146; 68 A. 634, 635; 14 American Juris-

prudence 951, Sections 270-272. It admits all facts in the indictment sufficiently pleaded. *Green v. Commonwealth,* 12 Allen (Mass.) 155, 172; 22 C.J.S. 'Criminal Law,' 656, Section 424. A plea of guilt is in itself a conviction. It is as conclusive as a verdict of a jury. The court has nothing to do but give judgment and sentence. *Kercheval v. U. S.,* 47 S. Ct. 582; 274 U. S. 220; 71 L. Ed. 1009. 'The sentence is the judgment.' *State v. Stickney,* 108 Me. 136; 79 A. 370, 371. The plea being guilty, there is no 'issue of fact joined on the indictment' as contemplated by Revised Statutes (1944), Chapter 135, Section 15.'' 64 A. 2d at 186-87.

There can be no question as to the voluntary character of King's plea of guilty to the charge of murder. Nor does he claim that he did not understand the nature and effect of his plea. Indeed, he could not in reason do so.

He had served four years as sheriff and chief law enforcement officer of Montgomery County. He was required by his office to attend all criminal trials in the circuit court as chief officer of that court. The duties of his office thoroughly acquainted him personally with criminal procedure, the trial of criminal cases, and the effect of a guilty plea made in open court.

In addition to his own personal knowledge and experience as to these matters, King was represented by the most formidable defense counsel afforded by the State of Mississippi. These counsel were privately employed by him and were of his own choosing. His attorneys were all experienced, reputable and capable members of the bar. We know his chief counsel to be one of the most resolute, forceful and able defense attorneys at the bar. He is a man of dauntless courage and impeccable character, with a long record of the successful defense of criminal cases. Cooper v. State, 244 Miss. 370, 141 So. 2d 735 (1962). In this case, the testimony of his client, a man of standing and affluence, as to his innocence of the crime could only be opposed by that of a lowly Negro accomplice, a confessed and convicted criminal.

Both King and his counsel had the benefit of participating in the trial of the case in which the jury failed to agree. They were thoroughly familiar with every facet of it. The plea of guilty was entered only after long and deliberate consideration and following a conference in which there participated not only King and his counsel, but members of King's family. The court below, as the trier of facts, was fully warranted in rejecting the evidence offered in support of King's motion. King was not convicted upon the testimony of Morris; he was convicted upon his own plea of guilty, made in open court upon arraignment upon the charge of murder.

The witness Steen, whose affidavit was attached to the motion, testified to facts, which the court was warranted in believing, showing that King knowingly obtained and filed in support of his motion, a false affidavit. Gray, the other convict whose affidavit King attached to his motion, was not produced and did not testify. The long delay of Dr. Woodworth in "disclosing" the alleged confession of Morris, after Morris was dead and could not deny it, coupled with the circumstances under which the disclosure was finally made, plus the impeaching testimony offered by the State, more than warranted the trial court in rejecting Dr. Woodworth's testimony.

King himself did not testify that he was innocent of the crime to which he had plead guilty. He did not so testify upon the hearing of the motion nor at the first trial when the jury failed to agree. In fact, he did not testify at all at that trial. At the hearing on the motion, he specifically limited his testimony to attempting to refute the testimony of Steen as to the circumstances under which Steen's affidavit was obtained.

The Court might properly consider this fact in connection with all of the other circumstances of the case. Miles v. Monaghan, 211 Miss. 150, 51 So. 2d 212 (1951).

The record discloses that King voluntarily confessed his guilt shortly after his arrest. But we leave entirely

out of consideration this extra-judicial confession (as distinguished from his open court confession by his guilty plea) for the trial court's denial of the motion was fully warranted without it. See Pittman v. State, 198 Miss. 797, 23 So. 2d 685 (1945); 21 Am. Jur. 2d *Criminal Law* § 505 at 496 (1965).

Because of the peculiar circumstances which gave rise to the motion, it has been necessary in the course of this opinion to refer to appellant's counsel at several stages of the proceedings. We wish to make abundantly clear that in all respects the conduct of counsel for appellant throughout has been in accordance with the highest traditions of the bar.

Affirmed.

*Gillespie, P. J., and Brady, Inzer and Robertson, JJ.,* concur.